**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**WILLIAM RAY MCDERMITT,**

       **Plaintiff,**

                               **Civil Action No. 2:16cv109
                               (Judge Bailey)**

**JIM RUBENSTEIN,** West Virginia
Department of Corrections Commissioner,
Individually and in his Official Capacity;
**PATRICK MIRANDY**, Warden at St. Mary's
Correctional Center, Individually and in his
Official Capacity; **TAMMY DAUGHERTY**,
Registered Nurse and Health Service
Administrator for Wexford, Individually and
In her Official Capacity; **DR. JAMES BEAN**,
M.D., employed by Wexford; **WEXFORD
HEALTH SOURCES, INC.,**

       **Defendants.**

**REPORT AND RECOMMENDATION**

**I.   Procedural History**

On December 23, 2016, the *pro se* Plaintiff, who was then a state inmate,

initiated this case by filing a civil rights action pursuant to 42 U.S.C. § 1983.  On May 9,

2017, the Plaintiff was granted leave to proceed *in forma pauperis* and was directed to

pay an initial partial filing fee. ECF No. 11. The Plaintiff paid that fee on May 18, 2017.

ECF No. 13. On June 12, 2017, the Plaintiff filed an Amended Complaint. ECF No. 15.

However, because it did not comply with the Local Rules of Prisoner Litigation, the Clerk

of Court was directed to mail the Plaintiff Attachment A of the Court's Federal Civil

Rights Complaint Pursuant to 42 U.S.C. § 1983 for his use. The Plaintiff was instructed

on the proper completion of the form and specifically warned that only those defendants

and claims presented in the amended complaint would be considered, and the original complaint would be superseded. ECF No. 17. On July 20, 2017, the Plaintiff filed an amended complaint on the court approved form. ECF No. 22. On November 15, 2017, the undersigned determined that summary dismissal was not appropriate, and an Order to Answer was entered which directed the Marshal Service to serve the Defendants with the amended complaint. ECF No. 27.

On December 15, 2017, Sherry Davis ("Davis"), Patrick Mirandy ("Mirandy") and Jim Rubenstein ("Rubenstein") filed a Motion to Dismiss. ECF No. 30. A Roseboro Notice was issued on December 18, 2017. ECF No. 32. On January 11, 2018, James Bean ("Bean") and Wexford Health Source, Inc. ("Wexford") filed a Motion to Dismiss. ECF No. 41. A Roseboro Notice was issued on January 12, 2018. ECF No. 43. On January 16, 2018, the Plaintiff filed a response to the Motion to Dismiss filed by Davis, Mirandy and Rubenstein. ECF No. 45. On January 29, 2018, the Plaintiff filed a Response to the Motion to Dismiss filed by Bean and Wexford. ECF No. 47. On February 1, 2018, Bean and Wexford filed a Reply. On February 5, 2018, Davis, Mirandy and Rubenstein filed a reply. ECF No. 49. On February 21, 2018, Tammy Daugherty ("Daugherty") filed a Motion to Dismiss. ECF No. 56. A Roseboro Notice was issued on February 22, 2018. On March 12, 2018, the Plaintiff filed a Response [ECF No. 61], and on March 29, 2018, Daugherty filed a reply. ECF No. 62.  This case is now before the undersigned for a report and recommendation on the pending motions to dismiss.

## II.   <u>Contentions of the Parties</u>

### A.   <u>The Amended Complaint (Complaint")</u>

In his complaint, the Plaintiff raises three claims. First, he alleges that all of the Defendants acted with deliberate indifference to an unsafe work environment and inadequate medical care. Second, he alleges that Rubenstein and Davis were negligent in failing to provide a safe work environment, and Wexford, Daugherty and Bean were negligent in failing to provide proper medical care for his injuries. Finally, the Plaintiff alleges medical malpractice and negligence against Wexford, Daugherty and Bean.

Although the Plaintiff provides little detail in his complaint, he attached to it a copy of his grievance process, which includes the following recitation of facts:

From August 8th until August 18, 2016, I was assigned to work with Maintenance Personnel at Huntsville Correctional Center to construct a Large Gable Roof Entrance to the Staff Building per a work order through my supervisor.

On August 18, 2016 at exactly 8:15 AM I was working atop of one "Buck" or level of scaffold, installing the soffit to the underside of the roof. The Maintenance Man I was helping, Mr. Kenney Wingfield, was working from an 8 foot stepladder and assisting me.

The scaffold only had one board, or plank on it, and it was the wrong size, nor was it safely latched. Also, the wood that it was planked with was rotten particleboard that had been patched with pieces of scrap lumber and was unsafe and insufficient to hold any weight. There were also several other deficiencies with the scaffold: (No handrails, toeboards, no mounting feet or wheels, a broken x brace mounting peg, and as mentioned before, not enough boards or planks, wrong size, and no locked safety latch).

I either stepped off or slipped off the board and it "teetered" up from not being locked. My right foot likely landed on the top rail, but, the mounting peg for the next level got hooked in my pant legs and tripped me causing me to fall (approximately 5 to 5 ½ feet off the ground).

As I fell, I literally hung upside down by my right foot, until my shoe came off. On the way to the ground, I hit my head against the 6" x 6" post,

and I tore the skin off both forearms trying to grab the post. I landed on the ground (concrete) directly on my hands and knees, causing several injuries.

My injuries are: right shoulder, both knees, right pinky finger, headaches, neck and back pain, sprained right ankle, several scrapes, lacerations, and contusions. All this was documented in Medical at HCC.

I was only treated by HCC Medical Department only for my open wounds. No X Rays or MRI's were done. Pictures were taken as well.

All of these events are a direct result of a Breach of Duty to Care from the WVDOC and put Mr. William McDermitt's Health and Safety at risk of severe injury and possible Death. This is a Direct violation of the WVDOC OPERATIONAL PROCEDURE and the WVDOC POLICY Directive not to mention the W.Va. Codes and the U.S. Laws and Rights that are in violation.

ECF No. 22-1 at 2.

### B.   <u>Motion to Dismiss by Jim Rubenstein, Patrick Mirandy and Sherry Davis</u>

With specific reference to Mirandy, the warden of St. Marys Correctional Center ("SMCC"), counsel maintains that he cannot be held liable for the claims described in the complaint, and all claims against Mirandy must be dismissed. More specifically, counsel notes that the Plaintiff is attempting to assert a claim in connection with an alleged injury which occurred while he was incarcerated at HCC. Accordingly, because there is no question that Mirandy is currently, and was at all times relevant to the case, the Warden at SMCC, he cannot be constitutionally liable in connection with any alleged injury that occurred at a different facility. In addition, counsel argues that to the extent the Plaintiff is asserting a claim based upon dissatisfaction with the medical treatment he has received and is receiving from various medical providers who are employed by Wexford Health Services, Counsel argues that because Mirandy is employed as a Warden, he is not qualified and is not responsible for making medical decisions for

4

inmates. Therefore, counsel argues that the Plaintiff is making a claim against Mirandy in his supervisory capacity, and liability in a 1983 action cannot be based solely on respondeat superior.

Counsel further argues that neither Rubenstein, Mirandy nor Davis can be held liable for the Plaintiff's dissatisfaction with his medical care. Noting that supervisory employees are entitled to rely on medical judgments made by prison physicians, counsel argues that the Plaintiff's claims regarding his medical care must be dismissed against these three defendants.

Counsel also argues that none of these three Defendants can be held liable based upon respondeat superior claims.  Although acknowledging that the Plaintiff recited the appropriate legal standard to maintain a constitutional claim against a supervisor, counsel contends that he only has asserted generic allegations and has not asserted any factual allegations that would support supervisory claims. Therefore, counsel maintains that the Plaintiff's claims are based upon the theory of respondeat superior which cannot support a constitutional claim.

Finally, with respect to the Plaintiff's claim that the defendants neglected to provide a safe work environment, counsel maintains that there is: (1) no allegation that he or anyone complained about the scaffolding; (2) no allegation that anyone was forced to use the scaffolding despite knowledge of its condition; (3) there is no allegation that he was forced to use the scaffolding as a form of punishment; and (4) there is no allegation that any defendant took any affirmative action to make the scaffolding dangerous or to intentionally cause injury to the Plaintiff. Accordingly, counsel argues that this is a "run of the mill workplace negligence claim." ECF No. 31 at

10. Accordingly, because the Plaintiff has not provided any factual allegations which would support a constitutional claim, counsel argues that it should be dismissed on its face.

### C.   The Plaintiff's Response

In his response, the Plaintiff relies on Mirandy's and Rubenstein's involvement in the administrative grievance process to alleges that they were either directly or indirectly liable for his lack of proper medical care, and had the opportunity to correct this during the grievance process.  In addition, the Plaintiff alleges, that at the very least, Mirandy should have looked into the situation and communicated with Wexford personnel before giving his grievance a "rubber stamp." ECF No. 45 at 2, ¶ 3.

The Plaintiff attached to his response a copy of an MRI report that was performed on November 10, 2017, as well as a report from Dr. Michael Goodwin, both of which postdate his grant of parole on September 19, 2017. The radiologist's report of the MRI indicates:

> Evidence of prior surgery probably involving repair of the posterior labrum. There is still a tear present in this structure and there also appears to be a Bankart variant involving the labral ligamentous complex at the 5:00 and 6:00 positions. Marginal tear of the supraspinatus insertion. Primary Diagnostic Code: ABNORMALITY, ATTN. NEEDED.

ECF No. 45-1 at 3.

The report from Dr. Goodwin, an orthopedic surgeon indicates that he examined the Plaintiff on December 21, 2017. It recites the Plaintiff's history of a fall from a scaffold while doing construction work at a state facility in July of 2016. X-ray was negative, and he still has pain with elevation of right arm above 90 degrees. Most of the pain is anterior right shoulder. Dr. Goodwin noted that the Plaintiff was able to work but

painful. ECF No. 45-3 at 1. Dr. Goodwin's diagnosis was rotator cuff tear right with possible anchor tear, post labrum of questionable significance. Id. at 2. Although the Plaintiff alleges that Dr. Goodwin strongly advised him to get it repaired before it became unrepairable, his treatment plan was "may call to schedule scope [rotator cuff] biceps repair right shoulder." ECF No. 45-3 at 2.

### D.  Motion to Dismiss by James Bean and Wexford Health Sources, Inc.

In support their Motion to Dismiss, Bean and Wexford note that the Plaintiff alleges that he exhausted his administrative grievances when he filed a grievance on September 13, 2016, while he was confined at St. Marys Correctional Center ("SMCC"). However Bean and Wexford allege that this one grievance only related to care that he received at Huttonsville Correctional Center ("HCC") and argue that the Plaintiff has not filed any grievance with respect to any medical care he received at SMCC, Stevens Correctional Center ("SCC"), or Mount Olive Correctional Center ("MOCC").[1] They emphasize that there is no mention of either Bean or SMCC. In addition, they note that the only grievance filed was rejected as untimely by the Commissioner of the West Virginia Department of Corrections. Therefore, Bean and Wexford argue that this case must be dismissed because the Plaintiff failed to exhaust his administrative remedies with respect to his care at SMCC, SCC, and MOCC.

In addition Wexford argues that it is not a person for purposes of § 1983, and the Plaintiff has failed to allege that Wexford has any policies or customs of deliberate

---

[1] The Plaintiff's fall from the scaffold occurred on August 18, 2016, while he was incarcerated at HCC. The Plaintiff was transferred from HCC to SMCC on September 2, 2016, approximately two weeks after the accident. The Plaintiff remained at SMCC until approximately April 26, 2017, when he was transferred to Stevens Correctional Center, where he remained until approximately June 19, 2017. From that date until he was released via parole on September 19, 2017, he was incarcerated at Mount Olive Correctional Center.

indifference to inmate care. With respect to the Plaintiff's allegation that Wexford required that certain medical procedures be completed before an MRI is authorized, it argues that this policy is no different than which the Plaintiff would experience in the private sector. Therefore, Wexford argues that respondeat superior does not apply, and the action should be dismissed against it.

In addition, with respect to deliberate indifference, Wexford recites the medical care outlined in the amended complaint filed by the Plaintiff on June 12, 2017 [ECF No. 15], including prompt treatment for his open wounds, x-rays of his shoulder and knees, pain relievers and anti-inflammatory drugs. With respect to Bean specifically, the motion contends that the Plaintiff acknowledges that he was examined multiple times by Bean, who responded to his complaints of pain by ordering x-rays, administering pain relievers and administering anti-inflammatory drugs up to and including cortisone shots. Accordingly, Wexford and Bean argue that the Plaintiff's only complaint is that he did not receive an MRI, and this represents a mere disagreement with his healthcare provider and does not support a claim of deliberate indifference.

### E.   Plaintiff's Response

In response, the Plaintiff indicates that he is "once again appalled at the lack of anybody willing to take responsibility for the gross lack of medical treatment I was given after my accident." ECF No. 47 at p. 1. In addition, in response to the argument that his grievance was untimely filed, the Plaintiff explains the reason for the alleged delay was because he was under the care of Bean and trusted that as a medical professional he was "following certain procedures" prior to an MRI. The Plaintiff also acknowledges that he did not file any other grievance but states that the one thing he learned as an inmate

was to "don't beat a dead horse." Id. at p. 2. He elaborated by indicating that filing several grievance is "surely asking for reprisal." Id. The Plaintiff concludes by alluding to his enclosed medical reports, grievance process, etc., and indicates that he hopes that this "court understands that [he] was put in a possibly life threatening situation by employees of the WVDOC, and denied proper medical treatment by Wexford Health Sources. " Id. at 4.

F.   **Bean and Wexford's Reply**

In reply, Bean and Wexford note that the Plaintiff has not refuted the arguments made by them with respect to his failure to exhaust administrative grievances. Therefore, they maintain that any claim arising out of Bean's treatment of the Plaintiff at SMCC should be dismissed. In addition, the reply notes that the Plaintiff has not addressed the argument that Wexford is not a person within the meaning of § 1983. Because the Plaintiff has not set forth any arguments or facts to support a claim against Wexford, the reply again maintains the it should be dismissed as a defendant.  Finally, the reply notes that the consultation sheets from the VA which the Plaintiff attached to his response show that before he could be referred to an orthopedic surgeon for a consult, the Plaintiff must have failed required conservative therapy, including a trial of NASIDS for six weeks, physical therapy for six weeks and a history of shoulder injections. ECF No. 47-3 at 2. Accordingly, these Defendants argue that this consultation sheet confirms their argument that Wexford's requirements of procedures before an MRI can be ordered are certainly no different than what he would face if he were not in prison and was seeking procedures and consultation.

### G.   Motion to Dismiss by Tammy Daugherty

The same attorney filed the motion to dismiss on behalf of Tammy Daugherty as filed the motion to dismiss on behalf of Bean and Wexford, and the arguments set forth are nearly identical, especially with respect to the Plaintiff's alleged failure to properly exhaust his administrative grievances. In addition, the motion notes that Daugherty was no longer employed as the Health Services Administrator at SMCC after January 18, 2017. Therefore, counsel maintains that the Plaintiff's claims against Daugherty could only arise out of his time at SMCC from September 2016, until the middle of January 2017. Counsel argues that it is important to note that the Plaintiff makes no allegations against Daugherty with respect to the provision of medical care to him. Moreover, counsel maintains that the only involvement that Daugherty had with the Plaintiff was to give a response to his grievance concerning his care at HCC. Accordingly, counsel argues that the Plaintiff seeks to have Daugherty held personally liable for alleged indifference to a serious medical need based on her response to his grievance, which counsel argues cannot support a claim of deliberate indifference.  Finally, to the extent that the Plaintiff alleges negligence and medical malpractice against Daugherty, as well as Bean and Wexford, counsel argues that the Plaintiff has failed to comply with the West Virginia Medical Professional Liability Act. In particular, counsel notes that the Plaintiff has failed to provide a certificate of merit.

### H.   Plaintiff's Response

The Plaintiff replies that the bottom line is that, "as an inmate in the West Virginia Division of Corrections, I was severely injured while working for them, and I was grossly neglected proper medical treatment by Wexford Health Sources and its employees.

Period." ECF No. 61 at p. 1. The Plaintiff reiterates that while he did not file his administrative grievance within 14 days of the accident, he filed his grievance immediately when he was informed that he was not going to receive proper medical treatment.

With respect to Daugherty, the Plaintiff indicates that the only written documentation he has from her is her answer to his grievance. He then notes that everything else involved with her was verbal in nature, and he alleges that these verbal incidents let him know immediately that he was not going to receive the treatment he needed. He then refers to Daugherty as the second most belligerent woman he had met in his life.

The Plaintiff also alleges that Bean told him "it is my professional medical opinion that you have suffered significant soft tissue damage and possible nerve damage that only an MRI would show, but unless we try certain procedures first, we'll just be pissing up a rope if we even ask for an MRI." ECF No. 61-5. It appears that the Plaintiff provides that alleged statement by Bean in an effort to establish that Wexford Health Sources had a policy that prevented a proper diagnosis and treatment of his injuries.

Finally, the Plaintiff attached medical records indicating that he had surgery on his right shoulder on February 21, 2018. ECF No. 61-1 at pp. 1-2. He alleges, but provides no corroboration, that he is scheduled for an MRI, then probable surgery on his left rotator cuff.

I. **Daugherty's Reply**

Daugherty contends that the Plaintiff was so focused on ranting about and casting aspersions upon counsel that he failed to address her motion to dismiss. In

particular, the reply notes that he failed to respond to the argument that he did not comply with the provisions of the West Virginia Medical Professional Liability Act. Therefore, she argues that any medical malpractice claims arising out of her alleged treatment of him at SMCC should be dismissed.

With respect to her argument that Plaintiff failed to exhaust his administrative grievances, Daugherty notes that it was the Commissioner who decided that the grievance was untimely. Further, in response to the Plaintiff's claim that he filed his grievance immediately when he was informed that he was not going to receive proper treatment, the reply notes he arrived at SMCC on September 2, 2016, and filed his grievance on September 23, 2016. Therefore, the reply notes that while the Plaintiff seemingly alleges that he decided within three weeks of his arrival at SMCC that he was not going to receive proper care, he never mentions any care at SMCC or care by Bean or Daugherty.  Accordingly, Daugherty advances the opinion that the Plaintiff is simply attempting to create an argument after the fact with reference to his grievance.

### III.  <u>Legal Standard</u>

<u>Motion to Dismiss</u>

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to support his or her allegations. <u>Revene v. Charles County Comm'rs</u>., 882 F.2d 870 (4th Cir. 1989). Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to 12(b)(6). A complaint must include "more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do . . . ." <u>Bell Atlantic</u> <u>Corp. v. Twombly</u>, 550 U.S. 544 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id</u>.

To survive a motion to dismiss a plaintiff must state a plausible claim in his complaint that is based on cognizant legal authority and includes more than conclusory or speculative factual allegations. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion couched as a factual allegation. <u>Id</u>.; <u>see also</u> <u>Nemet Chevrolet, Ltd. v.</u> <u>Comsumeraffairs.com, Inc.</u>, 591 F.3d 250 (4th Cir. 2009). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." <u>Id</u>.

Whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in the Federal Rules of Civil Procedure. <u>See</u> Fed. R. Civ. P. 8 (providing general rules of pleading), Fed. R. Civ. P. 9 (providing rules for pleading special matters), Fed. R. Civ. P. 10 (specifying pleading form), Fed. R. Civ. P. 11 (requiring the signing of a pleading and stating its significance), and Fed. R. Civ. P. 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted). <u>See</u> <u>Francis v. Giacomelli</u>, 588 F.3d 186 (4th Cir. 2009).

Plaintiff is proceeding *pro se* and therefore the Court is required to liberally construe his pleadings. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520-1 (1972) (per curiam); <u>Erikson v.</u> Pardus, 551 U.S. 89, 94 (2007);

Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). However, a court may not construct the plaintiff's legal arguments for her. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985). Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30 (1st Cir. 2001)(cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462 (4th Cir. 2011).

## IV.   Analysis

### A.  Exhaustion of Administrative Grievances

The Prison Litigation Reform Act (PLRA) requires that "[n]o action shall be brought with respect to prison conditions under section 1983 or this title, or any other

federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); see also Booth v. Churner, 532 U.S. 731, 736 (2001).  Though once at the discretion of the court, exhaustion is now mandatory under § 1997e(a), pursuant to the enactment of the PLRA[2], and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[3] and is required even when the relief sought is not available.  Booth at 741; see also McCarthy v. Madigan, 503 U.S. 140, 144 (1992) ("Where Congress specifically mandates, exhaustion is required").  Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted **prior** to filing a complaint in federal court.  See Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth at 741) (emphasis supplied).

The PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits."  Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006). Pursuant thereto, "the PLRA exhaustion requirement requires **full and proper** exhaustion."  Id. at 2387 (emphasis supplied).  Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system.  See id at 2393.

WVDOC Policy Directive 335.00 established a three level grievance process for prisoners to grieve their complaints in an attempt to resolve the prisoners' issues.  The

---

[2] See Porter v. Nussle, 534 U.S. 516, 524 (2002).

[3] Porter, 534 U.S. at 524.

first level involves filing a G-1 Grievance Form with the Unit Supervisor.  If the inmate receives no response or is unsatisfied with the response received at Level One, the inmate may proceed to Level Two by filing a G-2 Grievance Form with the warden/administrator.  Finally, the inmate may appeal the Level Two decision to the Commissioner of the Division of Corrections.  In order to be timely filed, the inmate grievance procedure must be initiated within (15) fifteen days of the occurrence which caused him to file a grievance.  See W. Va. C.S.R. § 90-9-4.1.  Should an inmate fail to comply fully with the provisions set forth in the applicable regulations, he shall be considered to have failed to exhaust his administrative remedies.  See W. Va. C.S.R. § 90-9-3.4.

In this case, the Plaintiff initiated the first step of the WVDOC administrative grievance procedure on September 23, 2016, to resolve a grievance surrounding his fall from the scaffold on August 8, 2018, and his follow-up medical care. The attachment to the grievance recited *supra*, details the incidents leading to his fall, the injuries he received, and the care, or alleged lack thereof, at HCC. Although the grievance was accepted by the Unit Manager, the answer, which was prepared by Daugherty in her position as the Health Service Administrator, indicated that the Plaintiff had been evaluated and treated by medical providers duly licensed in the State of West Virginia. Dissatisfied, the Plaintiff appealed to the Warden, who accepted the grievance and affirmed the response provided by the Unit Manager. Again dissatisfied, the Plaintiff appealed to the Commissioner, who rejected the grievance as untimely, and specifically noted that incident occurred August 18, 2016.

The undersigned is of the opinion that the Plaintiff was attempting to grieve two separate issues: (1) the unsafe work condition that caused his fall and (2) his follow-up medical care. Clearly, with respect to the unsafe work condition, the Plaintiff was fully aware of the situation on August 18, 2016, and his grievance process, initiated on September 23, 2016, was filed 37 days after the accident, and therefore failed to comply with the administrative provision governing timeliness. Therefore he has failed to exhaust his administrative remedies with respect to unsafe work conditions. See W. Va. C.S.R. 90-9-3.4.

With respect to the Plaintiff's grievance regarding his medical care, the undersigned notes that the Plaintiff maintains that he did not file a grievance earlier because he was under the care of Bean and trusted that as a medical professional, he was "following certain procedures" prior to an MRI. Had the Plaintiff referenced any care received at SMCC or by Bean, the undersigned would find that argument aimed at timeliness more persuasive. However, the Plaintiff only references HCC. Moreover, because he does not reference Bean, SMCC/Mirandy, or Daugherty, he clearly has not exhausted any claims against those Defendants. Therefore, the undersigned believes that the Plaintiff's claims regarding both an unsafe work condition and deliberate indifference to his medical care should be dismissed for failure to exhaust.

The undersigned acknowledges that despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements," Booth, 532 U.S. at 741, n.6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004) (defendant may be estopped

from asserting exhaustion as a defense when defendant's actions render grievance procedure unavailable); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (remedy not available within meaning of § 1997(e)(a) when prison officials prevent a prisoner from utilizing such remedy); Aceves v. Swanson, 75 F. App'x 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request).  Indeed, the Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."  Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Furthermore, a number of courts of appeals have held that prison officials' threats of violence can render administrative remedies unavailable.  See, e.g., Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008); Kaba v. Stepp, 458 F.3d 678, 686 (7th Cir. 2006); Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004).  But see Larkin v. Galloway, 266 F.3d 718, 723-24 (7th Cir. 2001) (failure to exhaust not excused because plaintiff was afraid of retaliation).  For threats or intimidation to render administrative remedies unavailable, they must typically be substantial and serious enough that they would deter a similarly situated prisoner of ordinary fitness from pursuing administrative remedies.  See Turner, 541 F.3d at 1085; Kaba, 458 F.3d at 684-86; Hemphill, 380 F.3d at 688.

Here, the Plaintiff responds to the motion to dismiss by Bean and Wexford and acknowledges that he did not file any other grievances. However, he makes a vague

suggestion that he knew better than to keep filing several grievance on the same issue when he was told no the first time, because that would surely be asking for reprisal. ECF No. 47 at p. 2.  To the extent that the Plaintiff may be alleging that he feared retaliation if he attempted the administrative remedy process, thereby relieving him of the obligation to exhaust his administrative remedies, the undersigned finds that he has presented no claim that is substantial and serious enough that would deter a similarly situated prisoner of ordinary fitness from pursuing administrative remedies.  Rather, the Plaintiff makes a mere conclusory statement without substantive facts.

Therefore, this matter should be dismissed for failure to exhaust administrative remedies.  However, even if the Court were inclined to find that the Plaintiff should be excused from exhaustion, his complaint fails to state a claim upon which relief can be granted against Defendants Rubenstein, Mirandy, Davis and Daugherty and fails to state a claims for relief regarding an unsafe work environment.  Finally, for the reasons discussed more fully below, the Plaintiff's claim of medical malpractice/negligence is due to be dismissed.

**B.  Deliberate Indifference/ Negligence**

In his first claim for relief, the Plaintiff names all of the Defendants and alleges that they were deliberately indifferent and violated his rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution as well as Sections Five, Ten and Fourteen of Article Three of the West Virginia Constitution. As supporting facts, the Plaintiff alleges that the Defendants gave tacit authorization to and/or had knowledge of the pervasive and well documented inadequate medical care and unsafe work environment. In addition, he maintains the Defendants: (1) failed to take corrective

action against misconduct; (2) allowed misconduct to continue; (3) encouraged misconduct; (4) failed to protect against misconduct; (5) failed to properly supervise which allowed misconduct; (6) failed to adequately discipline those responsible of misconduct; and (7) created policies and practices that allowed misconduct. The undersigned addresses the Plaintiff's claims regarding work safety and medical care separately.

In his second claim for relief, the Plaintiff again names all the Defendants and alleges they were negligent in acting in their professional capacities.  The Plaintiff specifically alleges that Rubenstein and Davis neglected to provide a safe work environment. With respect to Wexford, Daugherty and Bean, the Plaintiff alleges that the neglected to provide proper medical treatment of his injuries.  Finally, he alleges that Rubenstein and Mirandy failed to overturn Daugherty's decision not to properly treat Plaintiff's injuries during the grievance process.   Because the Plaintiff's first two claims are interrelated, they are addressed together.

### 1. Unsafe Work Environment

As previously indicated, the Plaintiff's attachment to his grievance sets forth a number of factors involving the scaffold which led to his injuries. According to that attachment, the Plaintiff was involved in constructing the gable roof from August 8, 2016, until August 18, 2016, when he fell from the scaffold. The undersigned notes that in his original complaint, the Plaintiff indicated that he has had several years of OSHA training and was a certified safety officer while employed with the United States Army Corps of Engineers for 12 years. ECF No. 1 at 8.

20

In order to state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that such deprivation is the result of conduct committed by a person acting under color of state law. West v. Adkins, 487 U.S. 42, 48 (1988). Prison officials may violate the Eighth Amendment to the United States Constitution if they are deliberately indifferent to an inmate's safety. See Young v. City of Mt. Ranier, 238 F.3d 567, 575 (4th Cir. 2001) (explaining that the deliberate indifference standard for claims alleging inadequate medical care is also applicable when prison officials fail to protect inmates from other sources of harm). However, to prevail on an Eighth Amendment claim, a plaintiff must show that the defendants  knew about and disregarded an excessive risk to his health or safety, and that their actions constitute a deliberate indifference to his safety. Farmer v. Brennen, 511 U.S. 825, 837 (1994). Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk of harm Id. at 835-39.  In short, the United States Supreme Court has made clear that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. Wilson v. Seiter, 501 U.S. 294, 297 (1994). Mere negligence is insufficient. See Daniels v. Williams, 474 U.S. 327, 328 (1986); Young, 238 F.3d at 575.

Courts have recognized that the mere failure to provide proper instructions or safety devices for use on prison details does not constitute deliberate indifference. See Franklin v. Kansas Dept. of Corrections, 160 Fed. Appx. 730, 736 (10th Cir. 2005) cert. denied, 549 U.S. 1219 (2009) (concluding that failure to inform and train inmates on proper lifting techniques did not rise above the level of negligence); Stephens v.

Johnson, 83 F.3d 198, 200-01 (8th Cir. 1998) (holding that lack of safety training and equipment, including no steel-toed boots and no safety straps on moving dollies in warehouse, as well as patterns of injuries, shows at most, negligence for not taking better safety precautions); Warren v. State of Mo., 995 F.2d 130 (8th Cir. 1993) (finding mere negligence and no deliberate indifference where officials failed to provide "anti-kickback" protective equipment on saw, even where officials knew of similar past injuries that could have been prevented with protective equipment); Brent v. McQuiggin, 2010 WL 3720010 *4 (W.D. Mich. Sept. 17, 2010) (failure to give training and protective gloves for using slicing machine); Brown v. Richmond Correctional Inst., 2006 WL 14431488 *2 (S.D.Ga. 2006) (failure to provide helmet for limb cutting duty); Arnold v. South Carolina Dept. of Corrections, 843 F.Supp. 110, 113 (D.S.C. 1994 (failure to repair faulty steam pot, despite knowledge of faults); and Lee v. Sikes, 870 F.Supp. 1096, 1099 (S.D.Ga.) (failure to train regarding dangers from hogs on prison farm operation).

In light of these holdings, the Plaintiff has not pleaded, let alone shown, that the Defendants knew about and disregarded an excessive risk to his health or safety, and that their actions constitute a deliberate indifference to his safety. Rather, the Plaintiff has asserted a negligence claim that fails to state a cause of action under the Eighth Amendment that should be dismissed.

**2. Inadequate Medical Care**

**a. Rubenstein, Davis and Mirandy**

The Plaintiff has again named each of the Defendants in this section, including Jim Rubenstein, who was the Commissioner of the WVDOC, Patrick Mirandy, who was

the Warden of SMCC, and Sherry Davis, who was the warden of HCC.  Liability under §1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001)(internal citation omitted).  Therefore, to establish liability under §1983, a plaintiff must specify the acts taken by each defendant which violate his constitutional rights.  See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988).  Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown.  See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).

As a preliminary matter, the Fourth Circuit has held that non-medical supervisory personnel may rely on the opinion of medical staff regarding the proper medical treatment of inmates.  See Miltier, *supra* at 855. Accordingly, these Defendants did not and should not substitute his or her own medical judgment for that of medical professionals.

Moreover, Plaintiff has not made any credible claims that these Defendants were personally involved in the violation of his constitutional rights.  Instead, it appears that Plaintiff names them in their official capacity as Commissioner of the WVDOC and wardens of HCC and SMCC. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state.  Id. at 166. In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. Id. (citing Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 694 (1978)).

There is no *respondeat superior* liability under §1983.  See Monell, 436 U.S. at 691; see also Vinnedge v. Gibbs, 550 F. 2d 926, 928 (4th Cir. 1997).  Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, *supra.*  Nonetheless, when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1113 (4th Cir. 1982).  Similarly, a supervisor may be liable under §1983 if the following elements are established:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).[4]

Liberally construed, with respect to Rubenstein, Mirandy and Davis the Plaintiff's complaint alleges that they gave tacit authorization and or had actual knowledge of inadequate medical care provided to him and failed to take corrective action. Regardless of Plaintiff's obvious insistence that these Defendants had a personal duty to ensure adequate care, the case law in this jurisdiction is that non-medical supervisory personnel are entitled to rely on the opinion of medical staff regarding the proper

---

[4] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Shaw, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

medical treatment of inmates. See Militier, *supra* at 855. Accordingly, these Defendants were entitled to rely on the medical staff's decisions regarding Plaintiff's care. Further, to the extent that Plaintiff is asserting that these Defendants were deliberately indifferent to his needs by denying his administrative grievances, that claim is without merit because that is not the type of personal involvement required to state a claim under 442 U.S.C. § 1983.  See Paige v. Kuprec, 2003 W.L. 23274357 *1 (D. Md. March 31, 2003).

Because Plaintiff fails to allege any credible personal involvement on the part of any of these Defendants, he does not make any allegations which reveal the presence of the required elements for supervisory liability and he fails to state a claim against them with respect to his medical care.  Accordingly, with respect to his claim of medical care/deliberate indifference, the claims against Rubenstein, Mirandy and Davis should be dismissed for failure to state a claim upon which relief can be granted.

**C.  Medical Malpractice and Negligence**

For his final claim, the Plaintiff alleges that Wexford, Daugherty and Bean committed medical malpractice by not properly treating his injuries and causing him pain, suffering, emotional distress and possible permanent and irreversible disabilities. To the extent that the Plaintiff is seeking to establish a medical negligence claim, he must comply with West Virginia law and establish that:

> (a)    the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3. When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the

health care provider was the proximate cause of the plaintiff's injuries, expert testimony

is required. Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606

(2000).

Additionally, under West Virginia law, certain requirements must be met before a

health care provider may be sued. W.Va. Code §55-7B-6. This section provides in

pertinent part:

**§55-7B-6**. Prerequisites for filing an action against a health care provider; procedures; sanctions.

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.

(b)        At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

26

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp. 2d 805, 806-807 (N.D. W.Va. 2004).[5]

With regard to the appropriate standard of care, the Plaintiff has completely failed to sustain his burden of proof. The Plaintiff does not assert, much less establish, the standard of care for a torn rotator cuff tear. Further, under the circumstances of this case, the Plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to the defendant(s)' alleged breach of the duty of care. This is not a case of alleged malpractice so obvious that it entitles the Plaintiff to the common knowledge exception of W.Va. Code §55-7B-6(c).[6] Nor is this a case where the treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, *supra* at 851.  Accordingly, the negligence alleged here does not relieve the Plaintiff of the obligation to comply with the MPLA pre-suit requirements. Therefore, even if this court had supplemental jurisdiction over the Plaintiff's potential state law claims for medical malpractice, the claim must be dismissed.

## V.   Recommendation

For the foregoing reasons, the undersigned recommends that: (1) the Motion to Dismiss filed by Sherry Davis, Patrick, Mirandy and Jim Rubenstein [ECF No. 30]  be

---

[5] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

[6] An example of such a case would be "hospital fall incidents, where a majority of jurisdictions do not require expert testimony. McGraw v. St. Joseph's Hosp., 200 W. Va. 114, 120, 488 S.E.2d 389 (W.Va. 1997) (emphasis in the original).

**GRANTED,** and the Plaintiff's complaint as it relates to them be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be **GRANTED**; (2) the Motion to Dismiss filed by James Bean and Wexford Health Sources [ECF No. 41] be **GRANTED**, and the Plaintiff's complaint as it relates to them regarding deliberate indifference to medical care be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies; (3) the Motion to Dismiss filed by Tammy Daugherty [ECF No. 56] be **GRANTED**, and the Plaintiff's complaint as it relates to her be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted; (4) the Plaintiff's Complaint as it relates to work safety be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted  (5) the Plaintiff's complaint  as it relates to medical malpractice/negligence be **DISMISSED WITHOUT PREJUDICE** for failure to satisfy the requirements of the West Virginia Medical Professional Liability Act; and (6) the Plaintiff's complaint as  it relates to deliberate indifference to his medical needs by Bean and Wexford be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.  A copy of any objections shall also be submitted to the United States District Judge.  **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**.   28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright

v. Collins, 766 F.2d 841 (4th Cir. 1985);  United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

     Upon entry of this Report and Recommendation, the clerk of court is **DIRECTED** to terminate the Magistrate Judge association with this case. The Clerk is further **DIRECTED** to send a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to the plaintiff's last known address as shown on the docket, and to counsel of record via electronic means.

     DATED: July 30, 2018.

                  */s/ James E. Seibert*
                  JAMES E. SEIBERT
                  UNITED STATES MAGISTRATE JUDGE